UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

           Plaintiff,

v.

Erik N. Adams-Reading,

           Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 09-198(1) ADM/SER
Civil No. 12-1053 ADM

_____

Surya Saxena, Esq., United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff-Respondent.

Erik N. Adams-Reading, pro se.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant-Petitioner Erik Adams-Reading's ("Adams-Reading") § 2255 Motion [Docket No. 37] and Motion to Amend Currently Filed 28 U.S.C. § 2255 [Docket No. 50] ("Motion to Amend"). For the reasons below, Adams-Reading's Motion to Amend is granted and his § 2255 Motion is denied.

## II. BACKGROUND

On July 22, 2009, Adams-Reading was indicted with one count of production of child pornography and two counts of receipt of child pornography. Indictment [Docket No. 1]. At his detention hearing on May 18, 2010, Adams-Reading, through his attorney Daniel Mohs, Esq., ("Mohs") requested a mental competency examination. See Competency Order [Docket No. 9] 1. Mohs alleged that Adams-Reading may have been suffering from a mental disease or

defect, and that Adams-Reading had a history of mental illness and a lack of understanding.  Id. The Government did not object.  Id.  On June 14, 2010, Chief Magistrate Judge Arthur J. Boylan ordered that Adams-Reading undergo a psychiatric examination to determine whether he could understand the proceedings against him and assist in his defense.  Id. at 2.

Between July 8 and August 23, 2010, forensic psychologist Judith Campbell, Ph.D., ("Dr. Campbell") evaluated Adams-Reading, reviewing his court records, Presentence Report, as well as his mental health records from Dr. Thomas Converse dated December 5, 2000, through March 26, 2008.  See generally Mohs Decl. [Docket No. 49].  During the evaluation, Dr. Campbell called Mohs three or four times, informing him she had gathered records from Adams-Reading's schools, a treating physician, and his mother.  Id. ¶ 5.  Based on reviewing these materials and evaluating Adams-Reading, Dr. Campbell concluded Adams-Reading began having behavioral issues at age four and was diagnosed as having a bipolar disorder at age eight.  Her own conclusion was that Adams-Reading never showed any true symptoms of bipolar disorder and instead exhibited drug-seeking behavior.  Competency Report [Docket No. 12] 3, 9.  Dr. Campbell further noted that Adams-Reading exhibited no functional impairment and demonstrated clear understanding of rules and policies throughout the course of his evaluation. Id. at 4–5.  Dr. Campbell recommended that Adams-Reading receive further assessment to diagnose his sexual interest in children, and she found that Adams-Reading may have a personality disorder, although it was "not considered [a] severe mental illness."  Id. at 10.  Dr. Campbell determined that Adams-Reading was competent to stand trial.  Id. at 10–12.

At the October 27, 2010 competency hearing, Mohs stated that he agreed with Dr. Campbell that Adams-Reading was competent to stand trial.  Oct. 31, 2010 Letter [Docket No.

14]; Mohs Decl. ¶ 6.  Specifically, Mohs had determined that Adams-Reading's case would not benefit from further investigation of his mental health history.  Mohs Decl. ¶ 6.  Based on Dr. Campbell's report, Mohs' agreement with the findings of that report, and the Court's own questioning of the defendant, then-Magistrate Judge Susan R. Nelson ordered Adams-Reading competent to stand trial.  Nov. 2, 2010 Order [Docket No. 16].

After the Court's Competency Order, Adams-Reading, through counsel, negotiated a plea agreement with the Government.  Mohs Decl. ¶ 7.  Mohs talked with Adams-Reading and his mother extensively, discussing statutory maximum and minimum prison terms, the statutory maximum supervised release term, the United States Sentencing Guidelines ("U.S.S.G.") provisions, and the Court's ultimate discretion in sentencing.  Id. ¶¶ 7–8.  Mohs also discussed the likelihood that Adams-Reading would have to register as a sex offender as part of his sentence, as well as the advantage of accepting responsibility, which would result in a lower total offense level.  Id. ¶¶ 8–9.  Mohs related to his client that every other state and federal sex offense case in which he had been involved had carried a requirement to register as a sex offender.  Id.

On January 14, 2011, Adams-Reading pleaded guilty before this Court to one count of receiving child pornography.  Plea Agreement [Docket No. 27].  The Government agreed to dismiss the remaining two counts.  Id.  The resulting Plea Agreement was signed by Adams-Reading, Mohs, and the Assistant United States Attorney ("AUSA") assigned to the case.  Id.  The Plea Agreement expressly included the applicable statutory maximum and minimum terms of imprisonment and supervised release.  Id. at 2.  Importantly, the Plea Agreement accurately stated that the maximum term of supervised release for this offense was life.  Id.  The parties

stipulated to these guideline calculations, agreeing they were not binding on the Court and that the Court had ultimate sentencing discretion. Id.

At the change-of-plea hearing, this Court questioned Adams-Reading about his decision to plead guilty and surrender his right to a trial. Jan. 14, 2011 Hr'g Tr. [Docket No. 44] 1–4. Adams-Reading voiced that he understood the significance of his guilty plea, that his decision was final, and that his mind was "free and clear." Id. at 7, 14. He also stated that he was entering his plea voluntarily and intelligently. Id. at 13. Upon the Court's inquiry regarding his counsel's performance, Adams-Reading stated that he was satisfied with Mohs' representation, that he was "a good lawyer," and that he had sufficient time to talk with him. Id. at 13–14. Concerning the specifics of the sentence possible under the plea agreement, the Court asked multiple times whether he understood that his conviction carried a sentence with a supervised release term of five years to life, which Adams-Reading acknowledged. Id. at 15–16, 18. Additionally, the Court reminded him that he would continue to be under the supervision of the Probation Officer even after his prison sentence was served. Id. at 15–16. The Court also reminded Adams-Reading that it retained ultimate discretion over the sentence, which he stated he understood and accepted. Id. at 19–20.

In addition to the Court's questioning of Adams-Reading, the AUSA prosecuting the case also inquired of him regarding the guilty plea. The AUSA asked whether he was satisfied with his counsel and the advice he had received and whether he was comfortable with the guilty plea; Adams-Reading agreed to both. Id. at 28. The Court ultimately accepted the guilty plea. Id. at 30–31.

Adams-Reading's Presentence Investigation Report ("PSR") was prepared and included a review of his background, physical condition, and his mental health history. PSR at 7–15. It restated facts from Dr. Campbell's records, but it also included summaries of records unavailable

4

at the time Dr. Campbell's analysis was conducted. Id. at 10–15. Additionally, the PSR included interviews with Adams-Reading and his mother. Mohs Decl. ¶ 11. Mohs reviewed the PSR and concluded that it was based on "substantially all" of Adams-Reading's mental health records. Id.

At sentencing, the Government argued for a sentence at the high end of the U.S.S.G. range, which the parties had calculated as 108–135 months in prison. Government Sentencing Position [Docket No. 33] 5. Citing Dr. Campbell's report and Adams-Reading's diminished mental capacity, Mohs argued for a downward variance, somewhere between the mandatory minimum of 60 months and the low end of the plea agreement range, 108 months. Def.'s Mot. for Downward Departure [Docket No. 34] 1. At the April 18, 2011 sentencing hearing, the Court articulated the applicable guideline range, which neither party contested. Apr. 18, 2011 Sentencing Hr'g Tr. [Docket No. 45] 1. On April 18, 2011, the Court sentenced Adams-Reading to 90 months in prison and recommending he be incarcerated at a facility that would allow him to participate in a sex offender treatment program. Sentencing J. [Docket No. 36] 1–2. The Court's downward variance was based upon Adams-Reading's lack of previous incarceration, lack of criminal history, and his history of psychiatric and health problems. See Apr. 18, 2011 Sentencing Hr'g Tr. 17; Statement of Reasons at 4.[1]

Adams-Reading claims that after receiving his sentence he informed Mohs that he was "dissatisfied with the length of [his] supervised release term" of fifteen years and that he wanted to appeal. § 2255 Mot. at 7. He claims that Mohs said "Okay" to his request, but then failed to appeal. Id. Mohs, however, denies that Adams-Reading ever requested an appeal, asserting that

---

[1] Although this document is sealed and does not have a docket number, both parties have access to it and Adams-Reading has waived his confidentiality to the relevant contents by arguing that his psychiatric and health problems were neither represented by his attorney Mohs nor considered by the Court.

5

he only asked Mohs to determine whether the Government would be filing a substantial assistance motion. Mohs Decl. ¶¶ 12–13. Mohs avers that had Adams-Reading requested an appeal, or had he thought that filing an appeal was in Adams-Reading's best interest, he would have filed an appeal. Id. ¶ 12.

Following the sentencing hearing, Adams-Reading continued to communicate with Mohs, calling him nearly once a month for seven or eight months. Id. at ¶ 14. Adams-Reading never requested an appeal or mentioned his dissatisfaction with the supervised release term during these phone calls. Id.

On April 27, 2012, Adams-Reading filed his § 2255 Motion, alleging three grounds for ineffective assistance of counsel Mohs and requesting this Court vacate his sentence and remand the case. § 2255 Mot. at 4–7, 12. On July 12, 2012, Adams-Reading filed a Motion to Amend, seeking to add a new ground to his § 2255 Motion.[2]

## III. DISCUSSION

To receive relief under 28 U.S.C. § 2255, a prisoner must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Id. Relief is therefore reserved for violations of constitutional rights and for a narrow range of injuries which were outside a direct appeal and which, if untreated, would result in a miscarriage of justice. See Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). In pleading guilty, a defendant waives all non-jurisdictional defects. Walker v. United States, 115 F.3d 603, 604 (8th Cir. 1997). "While a

---

[2]The Court will treat Adams-Reading's Motion to Amend as a supplement to his original § 2255 Motion and will therefore consider the merits of his fourth ground — that his guilty plea was entered into unknowingly.

guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

When a defendant contemporaneously makes statements at his change-of-plea or sentencing hearings asserting that his counsel was effective, those statements are strongly presumed to be true, and a later claim of ineffective assistance of counsel "is flatly contradicted" and belied by those prior in-court statements. Nguyen v. United States, 114 F.3d 699, 704 (8th Cir. 1997); see also Stageberg v. United States, Civ. No. 6-4954, Crim No. 5-51(3), 2007 WL 2023558, *1 (D. Minn. July 10, 2007) (finding subsequent claim of ineffective assistance of counsel unable to "overcome the strong presumption of verity attached to Petitioner's representations at the change of plea hearing"). Here, at his change-of-plea hearing Adams-Reading answered affirmatively when the Court asked him if he was "satisfied with [Mohs'] representation of [him]" and whether Mohs had "been a good lawyer for [him]." Jan. 14, 2011 Sentencing Tr. 13. Additionally, at the same hearing Adams-Reading answered "[y]es" when the Government asked if he was "satisfied with [his] counsel and the advice that [Mohs had] given [him]." Id. at 28. These repeated assertions of his counsel's effective assistance create a strong presumption of truthfulness which poses a significant obstacle to Adams-Reading's current § 2255 motion.

Establishing a § 2255 claim of ineffective assistance of counsel is a "heavy burden" upon the movant, see United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996), one which requires first a showing that "counsel's representation fell below an objective standard of reasonableness" and second that "there is a reasonable probability that, but for the counsel's unprofessional

7

errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Judicial review of defense counsel's performance is "highly deferential," and is not used to second-guess a counsel's performance in hindsight. Id. at 689. To lessen this tendency to assess performance with the benefit of knowing the ultimate outcome, the adequacy of counsel is determined from the "'counsel's perspective at the time' investigative decisions are made, and by giving a 'heavy measure of deference to counsel's judgment.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (quoting Strickland, 466 U.S. at 689, 691).

**A. Claim of Mohs' Affirmative Misleading Regarding Plea Consequences**

Adams-Reading raises three grounds for ineffective assistance of counsel. His first argument is that his guilty plea is invalid because "he was affirmatively misled by counsel regarding the direct consequences." § 2255 Mot. 4. Adams-Reading claims that Mohs told him the sentence would include no more than five years supervised release, that he would not have to register as a sex offender, and that, but for this misleading information, he would not have pleaded guilty. Id.

This claim fails on multiple levels. First, Mohs contends that he never told Adams-Reading his maximum supervised release period was five years or that he would not have to register. Mohs Decl. ¶¶ 8–9. This contention is supported by the uncontroverted language of the Plea Agreement which Mohs negotiated on his client's behalf. Mohs Decl. ¶ 8; Plea Agreement at 2. Mohs also explained that the guidelines range would have been significantly greater had Adams-Reading gone to trial. Id. ¶ 8. Mohs also informed his client that in every state or federal sex offense case on which he had worked, the defendant had been required to register as a sex offender. Id. ¶ 9. Where, as here, the attorney's advice accurately conveys the benefits of a plea agreement, a defendant's claim that he would have pleaded differently but for inaccurate sentencing advice is "inherently incredible." Sanders v. United States, 341 F.3d 720, 722–23

(8th Cir. 2003). For this reason alone, Adams-Reading's first argument for ineffective assistance of counsel fails.

Further, even if Mohs had misled Adams-Reading regarding his possible supervised release term, the Court and the Plea Agreement clearly informed him of the applicable range of supervised release terms. When the sentencing court accurately conveys the applicable sentencing guidelines range, a defendant is not prejudiced by the alleged mistakes of counsel in failing to properly communicate the same. See, e.g., United States v. Thornton, 23 F.3d 1532, 1533–34 (9th Cir. 1994) (finding that the defendant could not show prejudice from counsel's inaccurate sentencing prediction when the court properly advised him). Moreover, when the guidelines range was accurately set forth in the plea agreement, a defendant is likewise unable to claim that but for counsel's mistakes, he would have not entered a guilty plea. United States v. Wadi, Civ. No. 06-3618, 2006 WL 2943098, at *2 (D. Minn. Oct. 13, 2009) (denying ineffective assistance of counsel claim in part because defendant acknowledged the supervised release guidelines in his plea agreement). During the change-of-plea hearing, the Court asked whether Adams-Reading understood that his supervised release term "would have to be at least five years and could be up to life," to which he responded "[y]es." Jan. 14, 2011 Hr'g Tr. 18. Adams-Reading also affirmed his understanding that the Court had discretion, that "there aren't any guarantees about your sentence here," and that the Court was "allowed to use [its] judgment in determining how [he] fit within the guidelines . . . ." Id. at 19. The Plea Agreement also clearly stated the same applicable guidelines ranges. Plea Agreement at 4. Because Adams-Reading was repeatedly informed by the Court of his potential supervised release term, and because he signed the Plea Agreement which accurately stated the applicable guidelines range for supervised release, Adams-Reading cannot show that, but for Mohs' misleading advice, he would not have pleaded guilty.

### B. Claim that Mohs Failed to Investigate and Obtain Psychological History Records

Adams-Reading also argues that his attorney "failed to investigate and obtain the records of his psychological history," and that this failure deprived the Court of material information which could have served as mitigating factors to his sentence. § 2255 Mot. 5.

Although trial counsel has a duty to conduct a reasonable investigation or determine that such investigation is unnecessary, Strickland, 466 U.S. at 691, a strong presumption exists that a "counsel's decision to forgo additional psychological testing was reasonable." Link v. Luebbers, 469 F.3d 1197, 1203 (8th Cir. 2006). Moreover, decisions about conveying investigation results fall in the realm of trial strategy and are "virtually immune to second-guessing by habeas courts." Marcrum v. Luebbers, 509 F.3d 489, 505 (8th Cir. 2007). Rather than viewing counsel's decisions from the vantage point of hindsight, courts "must conduct an objective review of [counsel's] performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" Wiggins v. Smith, 539 U.S. 510, 523 (2003) (quoting Strickland, 466 U.S. at 688–89) (internal citation omitted).

Adams-Reading's arguments notwithstanding, Mohs conducted a reasonable investigation, and his decision to not conduct further investigation was a trial tactic which this Court will not second-guess. Mohs secured a competency evaluation for Adams-Reading, and Dr. Campbell's resulting report, which relied on numerous records obtained from Adams-Readings' schools, physicians, and family, was used by Mohs to successfully argue for a downward variance based on Adams-Reading's diminished mental capacity. See Mohs Decl. ¶¶ 5–6. The PSR included essentially all Adams-Reading's records, some of which Mohs noted were previously unavailable and not considered in Dr. Campbell's report. Id. ¶ 11. Therefore, by the time of sentencing, Mohs had examined and reviewed all relevant documents.

Considering the nature of some of these documents — for example, that Dr. Campbell's report's suggests that Adams-Reading did not have bipolar disorder, that he malingered, and that he had exhibited drug-seeking behavior — Mohs made a tactical decision not to seek additional evaluation of his client. Competency Report 9; Mohs Decl. ¶ 6. Mohs' tactical decision was not deficient and did not render his assistance ineffective.

Moreover, Adams-Reading cannot prove prejudice resulted from Mohs' tactical decisions, because the Court considered all the relevant documentation in determining the sentence. At the sentencing hearing, Mohs highlighted Dr. Campbell's report as well as the PSR, including information that Adams-Reading was sexually assaulted as a child. Sentencing Tr. 6:8-9:9. The Court had access to both Dr. Campbell's report and the PSR, and due to these mitigating factors, a 90-month sentence significantly below the guidelines range of 151–188 months was imposed. Id. 3, 17. Where a petitioner fails to show that the outcome would have been different based on information not considered by the sentencing court, no prejudice has been shown and the claim for ineffective assistance of counsel fails. See, e.g., Robinson v. United States, No. 4:09CV02089, 2010 WL 4720052, at *3 (E.D. Mo. Nov. 15, 2010) ("Because [the court] actually considered the facts included in the PSR when determining [petitioner's] sentence, any alleged error by counsel did not prejudice [petitioner]."). In Robinson, the court denied petitioner's claim of ineffective assistance of counsel because, although counsel had not specifically mentioned several relevant mitigating factors from petitioner's history at the sentencing hearing, the court had considered those factors as set forth in the PSR. Id. Here, the Court not only explicitly relied on the PSR, but Mohs actually highlighted the relevant historical facts in his argument for a downward variance in sentencing. Accordingly, Adams-Reading's second argument for ineffective assistance of counsel fails.

### C. Claim of Failure to File Notice of Appeal

The third argument Adams-Reading makes is that Mohs was ineffective because he failed to file an appeal. Adams-Reading avers that he told Mohs he wanted to appeal the length of his supervised release term, and he alleges that Mohs said "Okay." § 2255 Mot. 7. Mohs did not file an appeal, and Adams-Reading now argues that he would have appealed but for Mohs' failure.

An ineffective assistance of counsel claim based on a failure to appeal is also analyzed under the Strickland test, and it involves a two-step analysis. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). The first question is whether a defendant specifically requested an appeal. When a defendant specifically instructs his attorney to file an appeal, the attorney's disregard of such instructions is professionally unreasonable. Id. (citations omitted). If an attorney fails to file an appeal after being instructed to do so by his client, this constitutes ineffective assistance of counsel under § 2255 and the defendant need not show actual prejudice or likelihood of success on appeal. Yodprasit v. United States, 294 F.3d 966, 969 (8th Cir. 2002). Conversely, if a defendant expressly tells his attorney not to file an appeal, the defendant cannot later argue ineffectiveness of counsel on this issue. Roe, 528 U.S. at 477. When the defendant has not instructed his counsel to appeal, the court looks to whether counsel consulted with his client regarding an appeal. Id. at 478. "Consulting," in this context, means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. When counsel has consulted with a client, counsel's performance is deficient if the client's request is not followed. Id.

Absent a consultation, the next inquiry is whether the failure to consult with the client itself constitutes deficient performance. Id. While counsel's performance is not per se deficient in all cases where counsel fails to consult with a client, counsel does have a constitutional duty

to consult with a defendant regarding an appeal in the following two instances: (1) where a rational defendant would want to appeal because there are valid grounds for doing so; or (2) where a particular defendant has reasonably demonstrated to counsel an interest in appealing. Id. at 480. Most cases under this analysis find that counsel had a duty to consult. Id. The defendant bears the burden of proving that he instructed counsel to file an appeal. Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000).

Adams-Reading has not met his burden of establishing that he instructed Mohs to file an appeal. Adams-Reading now states in conclusory fashion only that he told Mohs he wanted to appeal, and that Mohs agreed. § Mot. 7. Mohs, on the other hand, declares that "Adams-Reading did not in any way indicate that he would like me to file an appeal of his sentence," and that he would have filed an appeal if he had been asked. Mohs Decl. ¶ 12. Moreover, Mohs avers he did not think it was in Adams-Reading's best interest to appeal. Id. Mohs states that Adams-Reading only asked him to follow-up on whether the Government would file a motion for substantial assistance, and that in the months since sentencing Adams-Reading has talked to him once a month, about seven or eight times. Id. ¶ 14. During these numerous communications with his attorney, Adams-Reading admittedly never asked about the appeal and did not discover no appeal had been filed until April 2012. See § 2255 Mot. 7 ("[M]ovant recently discovered that counsel filed no Notice of Appeal . . . ."). Adams-Reading has offered no supporting evidence to verify this off-the-record conversation which he alleges occurred after his sentencing hearing, as is required to meet his burden of proof required by Barger. See, e.g., United States v. Seebeck, Crim. No. 06-379, 2012 WL 2395176, at *4 (D. Minn. June 25, 2012) ("[T]he Court finds it significant that the Defendant has not put forth any evidence to substantiate his claim that he told [his attorney] to appeal his sentence."). With the utter lack of additional documentation,

13

this Court is unable to find that Adams-Reading has met his burden of proving he instructed Mohs to file an appeal.

Additionally, the Court finds Adams-Reading's recent assertion that he requested an appeal to lack credibility. When evidence shows that the defendant contacted his attorney after sentencing and did not broach the subject of appeal, and when that defendant has failed to offer any corroborating evidence to show he did in request an appeal, that defendant's testimony is not credible. See, e.g., Seebeck, 2012 WL 2395176, at *4; United States v. Keys, 469 F.Supp.2d 742, 750 (D. Minn. 2007) (finding claim of ineffective assistance of counsel failed where defendant proffered no evidence that he expressly instructed his attorney to appeal and where court had no reason to doubt attorney's credibility). A defendant "must clearly establish that he instructed counsel to file an appeal." Plummer v. United States, Civ. No. 06-2808, Crim. No. 05-184(1), 2006 WL 2860874, at *2 (D. Minn. Oct. 4, 2006) (citing Roe, 528 U.S. at 477). A naked assertion that defendant requested an appeal is insufficient — a defendant's right to appeal "does not depend upon a request, but the desire to appeal must be manifest." Barger, 204 F.3d at 1182 (internal quotations omitted); see also Keys, 469 F.Supp.2d at 749. At the sentencing, the Court clearly informed Adams-Reading that "[a]ny appeal would have to be filed within the next ten days or would be a waiver of that right to appeal." Sentencing Hr'g Tr. 17. Adams-Reading's assertion that he requested an appeal at the end of that hearing, but, despite knowing of the ten-day appeal deadline, never broached the topic with his attorney again, lacks credibility. Having no reason to doubt Mohs' credibility, having serious concerns with Adams-Reading's credibility based on his mental health history and the Court's observations of him at the change-of-plea and sentencing hearings, and having no evidence presented with which to corroborate Adams-Reading's assertion that he requested an appeal, this Court finds he has failed to meet his burden of proving that he did request an appeal.

14

The next inquiry, then, is whether the attorney consulted or should have consulted with his client regarding an appeal. Here, neither side contends that Mohs ever consulted with Adams-Reading regarding the benefits and disadvantages of taking an appeal, so the court moves to the final analysis of whether Mohs' failure to consult with Adams-Reading constitutes deficient performance. The Court finds that Mohs did not have a constitutional duty to consult with Adams-Reading regarding an appeal because neither of the Roe circumstances exist. No rational defendant would want to appeal because no valid grounds exist for doing so. Adams-Reading's sentence was ninety months, well below the minimum of the sentencing guidelines range. Further, his supervised release term of fifteen years was on the low end of the applicable guidelines range of 5 years to life. Because of this low sentence, no rational defendant would want to appeal. Additionally, Adams-Reading did not reasonably demonstrate to Mohs an interest in appealing. Given that neither of the Roe circumstances exist, Mohs did not have a constitutional duty to consult with Adams-Reading about an appeal. As a result, Mohs' failure to consult did not constitute ineffective assistance of counsel. Therefore, Adams-Reading's third argument for ineffective assistance of counsel fails.

**D. Claim of Unknowingly Entering into Guilty Plea**

In addition to seeking § 2255 relief on the ground of ineffective assistance of counsel, Adams-Reading alleges that he unknowingly entered into his guilty plea in violation of the Due Process Clauses. See Mot. to Amend. This argument fails, however, because the record incontrovertibly shows that Adams-Reading entered into his guilty plea after consulting with counsel and with full knowledge. As previously stated in Section III(A), the Court, the Plea Agreement, and Mohs all informed Adams-Reading of the consequences of his guilty plea. The Court expressly inquired as to whether Adams-Reading understood the rights he was forfeiting, see Jan. 14, 2011 Tr. 10–13, whether his attorney had satisfactorily represented him and

provided him legal counsel, id. 13, and whether he fully understood and agreed with what the Plea Agreement stated, id. 14–23. To all the inquiries, Adams-Reading agreed by saying "yes." Id. Finally, the Court read Count Two to Adams-Reading, to which he replied, "Guilty." Id. 23–24. Because Adams-Reading has offered no factual basis to show that he unknowingly entered the guilty plea, and because the transcripts from the hearings verify that his guilty plea was entered into knowingly, Adams-Reading's fourth ground for § 2255 relief is denied.

## IV.  CERTIFICATE OF APPEALABILITY

A court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds there are debatable issues presented and will therefore grant Adams-Reading a certificate of appealability.

## V.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Erik Adams-Reading's Motion to Amend currently filed 28 U.S.C. § 2255 [Docket No. 50] is **GRANTED**;

2. Defendant Erik Adams-Reading's § 2255 Motion [Docket No. 37] is **DENIED**; and

16

3. A Certificate of Appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


    s/Ann D. Montgomery    
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 10, 2012.